Case number 23-5128. Katherine Johnson et al. appellants versus Xavier Becerra in his official capacity as Secretary of Health and Human Services. Ms. Burrs for the appellants, Mr. Hazel for the appellee. Good morning, Council. Ms. Burrs, please proceed when you're ready. Thank you, Your Honors. May it please the Court, I'm Alice Burrs on behalf of the plaintiffs' appellants. The issue is whether the plaintiffs have plausibly alleged redressable injuries. The plaintiffs have disabling conditions, multiple sclerosis, quadriplegia. They need and qualify for Medicare-covered home health aid services, help them bathe, go to the bathroom, change positions, activities that are covered under the statute and that are critical to their ability to remain in their homes. But their need for home health aids has been neglected by CMS, the Medicare agency, even though Congress created Medicare coverage of home health aid services for all who qualify and did not exclude people who have MS or other chronic disabilities. Plaintiffs have plausibly alleged that their injuries are redressable by the defendant, by the secretary. First, the secretary has and relies on a system that's designed to affect home health agency decisions and behavior. The secretary creates an incentive structure with criteria to evaluate home health agencies for quality, to select home health agencies and their claims for audits and reviews. He does that with the purpose and the expectation of changing Medicare home health agency's behavior. And plaintiffs' relief would make sure that those criteria evaluate whether they, as people with chronic disabilities, are being properly served and that they don't penalize providers who care for patients. Counsel, isn't this case very similar to Simon v. East Kentucky Welfare Rights Organization? It seems similar in the sense that you're suing an agency and the policies encourage a private third party to do something you don't want it to do. And in that case, the Supreme Court held that was kind of speculative to say that this was caused by the agency. There are distinctions, Your Honor, and one of the biggest distinctions is the very different relationship between the defendant in Simon and the third parties in that case and the defendant here, Secretary of Health and Human Services, and the third parties in this case. And in Simon, the IRS commissioner was just the tax official with regard to the hospitals. Here, the Secretary of Health and Human Services, first of all, has a duty to the plaintiffs in this case to ensure that the Medicare program is serving them and serving them safely and also not discriminating against them, and also is the official that certifies the home health agencies. Medicare certified home health agencies are certified by the defendant's secretary in order to provide the services. They have to meet various conditions in order to do that, and the secretary has authority to make sure that they're doing that very thing in a safe and effective way. So the relationship is very different. You don't take issue with the general notion that the dynamic in this case involves the decision of a third party who stands between your clients and the secretary. There is a third party, but I would say I would make two points. First of all, the third party here, we can say that there is going to be, we can reasonably predict what the effect of the government action is going to be on this third party. So taking the more recent case, like Department of Aheaditive Enterprise versus FCC, we can say that there is going to, we can say that the government action will have reasonably predictable effects on these third parties. But I would also point out that for the Plaintiffs Rehabilitation Act claim here, the status of the home health agencies as third parties is less relevant. Not that the standing analysis is different, there is still all of the Lujan elements, but in this, since plaintiffs have alleged this distinct Olmstead injury, unjustified institutionalization or risk of unjustified institutionalization, and that puts an affirmative duty on the secretary to ensure that the program is administered in the most integrated setting appropriate to the needs of disabled beneficiaries, that is non-discretionary duty, he shall administer, he has to make that happen. That makes it very likely that a favorable decision will lead to a remedy that will redress their injuries. If I can ask you a question also, along the same lines, I mean, one of the things that I'm interested in hearing from you is the argument that these home health agencies are so heavily regulated that the secretary's actions may well predictably affect their behavior. And I understand that argument, but Congress has left these, you know, has left it to private choice, right? These home health care agencies can decide whether or not they want to take Medicare patients. And your argument seems to be that because they're already heavily regulated in other ways, this court can order the secretary to regulate them in additional ways. And so that argument seems to be, to raise not only the typical separation of powers problems between Article 3 and Article 2, but also possibly between Article 1, because Congress has specifically left these choices to private action. Well, thank you, Your Honor. I would say in response to that, that we are we're looking at the Medicare statute. I mean, there you're I think your honor is referring to the fact that home health agencies, for example, the secretary can't force a home health agency to serve a patient. But Congress also did mandate in the Medicare statute that there's a home health benefit and that people if people qualify for that home health benefit. Of course, there's a benefit, but the secretary can't force agencies to provide that benefit. That's like private action. The secretary can't force a home health agency to serve a patient, but he does create an incentive structure that the agencies predictably respond to. And they make choices based on those incentives. And that's what makes it likely that changing the incentives will change the behavior. But I think what the secretary is not permitted to do is simply throw up his hands and say, well, there's nothing I can do in response to this very real problem of people with serious disabilities being left out of home health aid services that Congress put in the statute. I mean, Congress got that part right. Congress put in the statute that there is a benefit of up to 28 hours per week of home health aid services for those who qualify. Plaintiffs do qualify. Congress put that in the statute to help people and help keep them in their homes. And people with serious chronic disabilities can't be carved out of that benefit. People with MS, people with other chronic disabilities. Sure. Is there a disparity between the rate that Medicare reimburses the home health aides as compared to the market rate? And what is that disparity? Um, well, we I'm not sure what the exact disparity is. Your honor. We do recognize that the payment system with a perspective bundled payments is in the statute. Um, there there are private pay rates. Um, in fact, Miss Johnson, one of the name plaintiffs, is now separately paying private pay, which is not how the home health benefit is supposed to work. It's supposed to be an all encompassing benefit. We don't force. Is she paying a different rate? Um, privately versus getting reimbursed? She's she. Yes, I mean, she's she's paying, I believe, in an hourly rate separate and apart from the bundled rate that Medicare home that Medicare pays trying to get a sense of the economic incentives for the home. Yeah. So it seems to me that they probably make more money by serving people who are not being reimbursed by Medicare. Is that correct? By serving people who are not reimbursed by Medicare, right? Well, parties are just paying more than the people who are getting reimbursed by Medicare. Yes, I think that that may be so. I mean, on our record, what we have are these are someone like Miss services reimbursed by Medicare, and then the same agency is also getting private payments from Miss Johnson, um, for just for the home health aid services and the to be an indication that she can get the services if she's willing to pay more if she's if she's willing to pay more. And that is not how the home health benefit is contemplated. I understand that's not how it works. But I guess what I'm trying to get at is if what's driving the home health aides not to serve people like your clients is the fact that they're not getting paid as much, then what you're alleging here is not really redressable because the payment rates are set by statute. And so the policies that the agency adopts can't really change that economic dynamic. Well, I would say, Your Honor, that the agencies are in exchange for the federal Medicare dollars that they receive. They are supposed to provide a bundle of service in exchange for that bundle of dollars that they receive. And they they are not supposed to sort of remove a slice of the benefit and say, Okay, you know, we will serve you, but you have to pay for this other piece of the benefit herself. So what I again don't think that the secretary is rehabilitation act claim can say that because the payment system is there, the coverage of services that Congress mandated can be whittled down, particularly when it results in people like Ms. Johnson or Ms. Bonnell, the other individual named plaintiff in the case being admitted to hospitals and nursing homes unnecessarily. But if the reason the home health aides are not getting paid as much, what can these other policy changes that you're asking for really do about that? It's not going to change. It's not going to redress the injury. They're still not going to get services if what's driving the decision is money. So thank you, Your Honor. So there are actions that the secretary can take. And I would say, first of all, the secretary does have flexibility under the payment statute. It is a method of administration that's in the injunction in the proposed injunction that one of the methods of administration, one of the tools that the secretary has, one of the levers that he can use in creating the incentives is, um, the is, uh, the payment rates that he has the flexibility to set under that statute. And then there's also the targeted. You're asking that he changed the payment rates. Well, there is. There are use. There are. He does have flexibility under the statute to make changes in how the payment works. I'm sorry. I don't can't say the precise details, but it is. Uh, he can change things like the case mix usage, how how things are weighted under the under the which can change the incentives. Um, I'm sorry. And is that one of the is that one of the, um, is that one of the sources of relief that you're requesting? Yes, it's listed in the injunction as one of the requested relief. And then also the other sort of levers that we're asking the secretary to use our criteria that are used in the and the secretary's audit and reviews and in the secretary's quality rating measures. Those air also tools that the secretary has at his disposals to to change the incentive structure, um, that the home health agencies could could respond to. You make sure my colleagues don't have additional questions at this time. We'll give you a little time for rebuttal. Thank you very much. You're honest. Thank you, Miss Bears. Mr Hazel. Good morning, your honors. May please the court. Stephen Hazel for the government. Plaintiffs fall well short of satisfying the high standard this court has set for establishing standing to sue the government based on the conduct of regulated third parties. Plaintiffs allege injury at the hands of independent health care providers whose decisions reflect economic factors  outside the secretary's control. And plaintiffs separately lack standing because they failed to identify any available relief that would redress their injuries. This court should affirm. I'd like to start with the reimbursement rates argument that the council brought up earlier. This wasn't something that the district court even thought that plaintiffs had had raised. It certainly wasn't a focus of the analysis in district court or in this court. And there's a good reason for that. That's because plaintiffs haven't challenged the secretary's annual rate making rulemaking. They haven't identified any way that the secretary could set the rates differently that would help them. And that's that's fatal to their attempt to establish redress ability or causation on that basis. I'm happy to answer any questions the court may have. Otherwise, we would urge the court to affirm. Can you just address the theory that because there's an Olmstead issue in the case that the normal third third party mediated standing inquiry shouldn't apply? So your honor, I think that aspect of plaintiffs argument confuses standing in the merits. I mean, there's there's always going to be an allegation that on the merits, you know, some the defendant was acting inconsistent with some statutory duty. The standing question under Article three is different. And here the question is, you know, can plaintiffs establish this causal chain between the injury that they've identified and the particular actions of the secretary that they're focusing on, which are the rates and the audits. And so the the causation theory for both the Olmstead claim and their Medicare statute claim is the same, and it fails for the same reason. So when you when you say it's the rates and the audits, the audience, I get what do you mean by the rates? The quality ratings? Apologize. Okay. Unless there are further questions. Yes. Thank you, Mr Hazel. Bears will give you two minutes for rebuttal. Thank you, Your Honor. With regard to the, um, the criteria in the audits and the ratings, the overall goal would be to make those criteria more inclusive of the of the plaintiffs to make sure that they are not skewed toward, for example, people who can, um, improve someone who can improve an ambulation, for example, that would not include someone like Miss Johnson. Um, and just to follow up on the question regarding the reimbursement, um, plaintiffs alleged in paragraph 58 of the complaint that each year the secretary adjusts and updates the home health payment rates through administrative rulemaking. Um, and the injunction, um, is, uh, on J. A. 58 paragraph for D. Um, was to plaintiffs requested ensuring that payment criteria and methods effectuate reasonable access to AIDS in the most integrated setting. Um, so the payment is another uh, uh, aspect of the methods of administration under the Rehabilitation Act. Again, one of part of the, um, tools, one of the tools in the toolbox that the secretary has, um, in order to make sure that the criteria are are inclusive and make sure that Congress's intent under the statute, um, is is indeed, um, put into effect. Thank you, Counsel. Thank you to both. Counsel will take this case under submission. Thank you.
judges: Srinivasan, Rao, Pan